UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN THUMANN, | : | Case No. 1:20-cv-00125 |
| | : | |
| Plaintiff, | : | |
| | : | District Judge Timothy S. Black |
| v. | : | |
| | : | |
| ALEX AZAR, in his capacity as Secretary of the United States Department of Health and Human Services, | : : : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

The issue Defendant addresses in this Sur-Reply is the import of the data disclosed to Plaintiff in its Response to Plaintiff's First Set of Interrogatories ("Def.'s Interrog. Response") (Doc. 14-1).[1] The data concerns the number of requests for administrative law judge "ALJ" hearings in Medicare claim appeals for fiscal years 2018 and 2019. The data is segregated by whether the hearing was requested by the Medicare beneficiary or by a non-beneficiary (e.g., the provider or supplier of services), and whether the requesting party had representation at the time the request was docketed. Plaintiff requested this data with the goal of refuting Defendant's argument that it is practically impossible for him to litigate in every ALJ hearing where he is eligible to appear. *See* Plaintiff's Reply ("Pl.'s Reply") at 1-2 (Doc. 14, PageID 2455-56).

---

[1] It is Defendant's understanding that the Court granted leave for it to submit a sur-reply for the sole purpose of addressing the data that it provided to Plaintiff. Accordingly, Defendant does not address the other arguments that Plaintiff raised in his Reply.

However, the data in fact supports Defendant's position.[2]

**II.    ARGUMENT**

Under 42 C.F.R. § 405.1012(a)(1), Defendant is entitled to appear at an ALJ hearing for a Medicare claim appeal "unless the request for hearing is filed by an unrepresented beneficiary." Thus, Defendant is eligible to appear at all ALJ hearings when the request was filed by a represented beneficiary, and also at all ALJ hearings when the request was filed by a non-beneficiary (regardless of representation status). Given this legal background, the relevant data disclosed to Plaintiff is as follows:

|  | Fiscal Year 2018 | Fiscal Year 2019 |
|---|---|---|
| Represented Beneficiary ALJ Requests | 2,062 | 2,602 |
| Non-Beneficiary ALJ Requests | 56,497 | 37,022 |
| Total Number of ALJ Requests | 62,762 | 43,887 |

*See* Def.'s Interrog. Response at 4-6 (Doc. 14-1, PageID 2477-79).

This data shows that Defendant was eligible to appear in 58,559 of the ALJ hearings requested in fiscal year 2018 and 39,624 of the ALJ hearings requested in fiscal year 2019.[3] Even

---

[2] Plaintiff characterizes Defendant as being resistant to disclose the data because it would harm his case. *See* Pl.'s Reply at 1-2 (Doc. 14, PageID 2455-56). That is incorrect. Defendant resisted disclosing the data because the Court's review in this case is limited to the certified administrative record. 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A); *EPI Corp. v. Chater*, 91 F.3d 143, 1996 WL 428409, at *5 (6th Cir. 1996). Further, insofar as Plaintiff believes discovery is necessary to determine whether the elements of collateral estoppel are met in this case, the fact that the Medicare Act provides no mechanism for discovery is yet another indication that the Medicare Act precludes application of collateral estoppel. *See* Defendant's Summary Judgment Response at 13-18 (Doc. 11, PageID 2439-44) (argument that the Medicare Act precludes application of collateral estoppel).

[3] Plaintiff's Reply cherry-picks the data by focusing on the number of hearings requested by represented beneficiaries, completely ignoring that the Secretary is eligible to appear in all hearings requested by non-beneficiaries. *See* Pl.'s Reply at 17 (Doc. 14, PageID 2471). For purposes of assessing whether an ALJ decision has preclusive effect, there is no principled distinction between hearings requested by beneficiaries versus non-beneficiaries.

2

if we reduce these numbers by the percentage of appeals that were dismissed (the overall dismissal rate was 60.7% in fiscal year 2018 and 54.3% in fiscal year 2019),[4] Defendant was still eligible to appear in 23,014 of the ALJ hearings requested in fiscal year 2018 and 18,108 of the ALJ hearings requested in fiscal year 2019.

Further, in assessing Defendant's capacity to litigate in ALJ hearings, the number of ALJ hearings requested by represented beneficiaries and by non-beneficiaries in fiscal years 2018 and 2019 is not the full story. There is also a significant backlog of ALJ hearing requests from prior fiscal years. *See Am. Hosp. Assoc. v. Azar*, 14-cv-851, Dkt. No. 98 (D.D.C. Jun. 26, 2020 Status Report) (showing beginning workload balance of 578,683 ALJ hearings in fiscal year 2018 and 417,198 ALJ hearings in fiscal year 2019). The percentage of hearing requests from fiscal years 2018 and 2019 where Defendant was eligible to appear was 93.3% and 90.3% respectively, so Defendant is likely eligible to appear (and has been eligible to appear) in hundreds of thousands of these backlogged hearing requests.

In sum, this data decisively shows that it is practically impossible for Defendant to litigate in all of the ALJ hearings where he is eligible to appear.[5] *See Christenson v. Azar*, No. 20-cv-194, 2020 WL 3642315, at *7 (E.D. Wis. Jul. 6, 2020), *reconsideration denied sub nom. Prosser v. Azar,* 2020 WL 6266051 (Sept. 24, 2020), *appeal docketed*, No. 20-3070 (7th Cir. Oct. 22, 2020)

---

[4] *See* HHS.gov, *Decision Statistics*, available at https://www.hhs.gov/about/agencies/omha/about/current-workload/decision-statistics/index.html (Aug. 21, 2020). Notably, the published data does not specify whether dismissals occurred prior to hearing (*i.e.*, before Defendant would have had an opportunity to appear) or whether the dismissal rate was consistent across different categories of appeal (*e.g.*, unrepresented beneficiary versus represented beneficiary versus non-beneficiary, etc.).

[5] Defendant also notes that its counsel has numerous responsibilities apart from Medicare litigation. *See* 85 Fed. Reg. 54581 – 54856 (Sept. 2, 2020) (Statement of Organization for Defendant's Office of General Counsel). Accordingly, Plaintiff's speculation about Defendant's capacity to litigate several thousand ALJ hearings based on the productivity of his private counsel's firm, Pl.'s Reply at 18 n.10 (Doc. 14, PageID 2472), is baseless.

("even several thousand beneficiary appeals filed annually makes it virtually impossible for the Secretary to be represented at every ALJ-level hearing.").

### III. CONCLUSION

The data disclosed to Plaintiff supports that, due to practical impossibility, Defendant only has a full and fair opportunity to litigate in an ALJ hearing if he actually appears—which in this case, he did not. For this reason, and for the reasons stated in Defendant's Summary Judgment Response, should the Court deny Defendant's Motion to Dismiss, the Court should grant summary judgment in the Defendant's favor and deny Plaintiff's motion for summary judgment.

Respectfully submitted,

DAVID DEVILLERS
United States Attorney

*s/Margaret A. Castro*
MARGARET A. CASTRO (0078968)
Assistant United States Attorney
Attorney for Defendant
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6972
E-mail: Margaret.Castro@usdoj.gov